IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SAMUEL DAVIS,                          :
                                       :
        Plaintiff,                     :
                                       :
vs.                                    :
                                       :      CIVIL ACTION 12-0620-M
CAROLYN W. COLVIN,                     :
Commission of Social Security,[1]     :
                                       :
        Defendant.                     :

<u>MEMORANDUM OPINION AND ORDER</u>

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3),
Plaintiff seeks judicial review of an adverse social security
ruling which denied claims for disability insurance benefits and
Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 17).
The parties filed written consent and this action has been
referred to the undersigned Magistrate Judge to conduct all
proceedings and order the entry of judgment in accordance with
28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 23).   Oral
argument was waived in this action (Doc. 22).   Upon
consideration of the administrative record and the memoranda of
the parties, it is **ORDERED** that the decision of the Commissioner
be **AFFIRMED** and that this action be **DISMISSED.**

_____

[1]Carolyn W. Colvin became the Commissioner of Social Security on
February 14, 2013.  Pursuant to Fed.R.Civ.P. 25(d), Colvin is
substituted for Michael J. Astrue as Defendant in this action.  No
further action needs to be taken as a result of this substitution.  42
U.S.C. § 405(g).

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-six years old, had completed an eighth-grade education, in special education classes (Tr. 352), and had previous work experience as a personal caregiver and musician (Tr. 69-70).  In claiming benefits, Plaintiff alleges disability due to degenerative disc disease of the lumbar spine, Type II diabetes, hypertension, microcytic anemia, and borderline intellectual functioning (Doc. 17 Fact Sheet).

The Plaintiff filed applications for disability insurance and SSI on June 11, 2009 (Tr. 131-38; *see also* Tr. 26). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not return to his former jobs, Davis was capable of performing specified

light work (Tr. 26-38).  Plaintiff requested review of the
hearing decision (Tr. 21) by the Appeals Council, but it was
denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not
supported by substantial evidence.  Specifically, Davis alleges
that:  (1) He meets the requirements of Listing 12.05C; (2) the
ALJ failed to properly examine his complaints of pain; and (3)
the ALJ improperly concluded that he was capable of working
(Doc. 17).  Defendant has responded to—and denies—these claims
(Doc. 18).  The relevant record medical evidence follows.

Plaintiff asserts a disability onset date of December 31,
2002 (Tr. 133, 135).  As noted by the ALJ (Tr. 29), the first
medical evidence dates back to October 19, 2006 when Davis went
to the Mobile Infirmary Medical Center with complaints of fever
and weakness for three days and a headache (Tr. 218-29).  A
chest x-ray was normal; a CT of the head revealed chronic
maxillary sinus disease compatible with acute sinusitis.  During
the course of his treatment, Plaintiff received Demerol,[2]
Phenergan,[3] Bicillin, and Lortab.[4]  At the time of discharge,
Davis's pain was rated as three on a scale of ten.  On December

_____

[2]*Demerol* is a narcotic analgesic used for the relief of moderate
to severe pain.  *Physician's Desk Reference* 2570-72 (52nd ed. 1998).
    [3]*Phenergan* is used as a light sedative.  *Physician's Desk
Reference* 3100-01 (52nd ed. 1998).
    [4]*Lortab* is a semisynthetic narcotic analgesic used for "the
relief of moderate to moderately severe pain."  *Physician's Desk
Reference* 2926-27 (52nd ed. 1998).

24, 2006, Plaintiff returned to Mobile Infirmary following an incident in which a car ran over his left foot; a splint was put on that leg (Tr. 212-17).  Davis was given Lortab; pain was zero on a ten-point scale at discharge.

On May 22, 2009, Plaintiff was seen by Neurologist Elias G. Chalhub for a psycho-educational evaluation (Tr. 231-37). Administration of the WAIS-III revealed verbal and performance IQ scores of 68 and 67, respectively; the full scale score was 65.  The Woodcock-Johnson-III test showed that Davis was functioning at a second-grade level in reading and only slightly better in math; with written language, Plaintiff was functioning a little higher than at a first-grade level.  Chalhub found Davis to be functioning within the mentally deficient range of overall intellectual functioning and diagnosed him to have mild mental retardation.  The Neurologist recommended a vision assessment, a vocational assessment, and a training program to help Plaintiff secure and maintain employment.

On June 11, 2009, Davis was seen at the Franklin Primary Health Center for lab work; he HAD cholesterol and triglycerides imbalances (Tr. 252-55).  Plaintiff was diagnosed to have hypertension, a dental abscess, and arthralgia; he was given prescriptions for Penicillin, Prinivil,[5] and Ultram[6] (Tr. 247-

---

[5]*Prinivil* is used in the treatment of hypertension. *Physician's Desk Reference* 2065-69. (62nd ed. 2008).

48).  On July 9, 2009, Davis complained of back pain for which
Dr. Otis Harrison prescribed Mobic[7] and Darvocet[8] (Tr. 243-44).
A week later, the pain was still present and Naproxen[9] was
prescribed (Tr. 241-42).  On July 22, x-rays showed a normal
left knee and disc space narrowing at L5-S1, indicating disc
degeneration (Tr. 251).  With complaints of continued back pain
on August 4, Plaintiff was told to keep taking Lortab, Mobic,
and Ultram (Tr. 239-40).

On September 1, 2009, Dr. Alan J. Sherman examined Davis
who was "very elusive in answering" questions (Tr. 256; *see
generally* Tr. 256-61).  On examination, the doctor found full
range of motion in the neck and all extremities; he did note
some mild crepitus in the left knee resulting in some mild
arthritis.  There was some hypertrophy of the lower back from
L2-L5, though it was nontender; he could forward flex about
seventy degrees.  Motor strength was 5/5; reflexes were 3/4 in
all extremities while grips were 5/5.  Dr. Sherman's diagnosis

---

[6]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

[7]*Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[8]Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation.  *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

[9]*Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain.  *Physician's Desk Reference* 2458 (52nd ed. 1998).

was low back pain, left knee pain, chest tightness, hypercholesterolemia, and hypertension.  In discussing the evaluation, the doctor noted that Davis showed signs of learning disabilities in keeping his focus and with memory problems. Sherman recommended a full psychological evaluation.

Records from the Franklin Primary Health Center show that, on August 24, 2009, Plaintiff complained of dizziness and nausea; Dr. Harrison prescribed Ultram and Lortab (Tr. 330-31; see generally Tr. 304-31).  On September 8, 2009, Davis was noted to have low back pain, hypertension, and hypolipidemia (Tr. 328-29).  On September 24, the doctor noted increased musculoskeletal back pain on range of motion as well as increased tenderness over the lumbosacral spine (Tr. 326-27). On October 22, Harrison noted that Plaintiff was walking with a cane; otherwise, examination results were the same as those from the previous month (Tr. 324-25).  Davis continued to complain of back pain in eleven different examinations over the next fourteen months; the doctor's treatment plan, during this period, seems to have exclusively consisted of prescribing pain medication (Tr. 304-23).

On November 16, 2009, Psychologist Thomas S. Bennett examined Plaintiff who demonstrated a normal range of affect; he was alert and oriented in all spheres (Tr. 263-67). Concentration and attention were slightly below average; he had

6

adequate immediate recall though short- and long-term memories were mildly impaired.  Abstract reasoning skills were moderately impaired; there were no signs of loose associations, tangential or circumstantial thinking, or confusion.  Judgment was adequate, though financial judgment was moderately impaired; he had poor insight.  Bennett's impression was that Plaintiff suffered from pain disorder and borderline intellectual functioning versus mild mental retardation.  The Psychologist thought that Davis "could probably make significant improvement in virtually every area with appropriate motivation" (Tr. 266). In other comments, Bennett stated as follows:

> Overall, Mr. Davis is a man who functions at a below average level intellectually.  He probably does have a lifelong history of mental retardation or mental slowness. . . . His activities and interests are slightly constricted relative to other people his age.  His ability to relate to others is slightly below average, but not impaired.  His ability to function independently is mildly impaired.  His ability to understand and carry out instructions is slightly below average, but not impaired, assuming that they are fairly simple instructions.  His ability to respond appropriately to supervisors and coworkers is slightly below average, but not impaired. He would probably respond to work pressures with increases in physical complaints.

(Tr. 266).

On November 25, 2009 Psychologist Donald E. Hinton, after

7

reviewing the medical and vocational records available at that time, but without benefit of examination, indicated that Davis suffered from borderline intelligence and a pain disorder that caused mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (Tr. 268-81).  Hinton further expressed the opinion that Plaintiff would be moderately limited in his ability to do the following:  understand, remember, and carry out detailed instructions; maintaining attention and concentration for extended periods; and in responding appropriately to changes in the work setting (Tr. 296-99).  Hinton stated that Davis could carry out very short and simple instructions for two-hour periods and that changes in the work setting should be minimal.

On October 25, 2010, Dr. Otis Harrison completed a clinical assessment of pain form in which he indicated that Davis had intractable and virtually incapacitating pain that was increased by physical activity, causing him to have to take medication or go to bed (Tr. 300).  Harrison further indicated that medication side effects would totally restrict Plaintiff from being productive in a work setting.

On December 30, 2010, Dr. Harrison referred Davis for physical therapy evaluation for low back pain and right hand tingling and numbness (Tr. 337-39).  The evaluator determined

that Plaintiff had impaired strength and activity, generally, of the musculoskeletal system.  More specifically, pain was noted in all ranges of motion in the cervical and lumbar spine; Davis was capable of only performing fifty percent of the motions in his lumbar spine.  Strength in the trunk and limbs was rated as "fair plus" (Tr. 338).  It was noted that Plaintiff did not complete any of the tasks requested on the physical capacity exam because of pain.  It was recommended that Davis undergo six weeks of physical therapy.

In an undated[10] physical capacities evaluation form, Dr. Otis Harrison indicated that Plaintiff was capable of lifting and carrying five pounds occasionally and one pound frequently; he would be able to sit and stand or walk for one hour, each, during an eight-hour day (Tr. 341).  Harrison stated that Davis did not need a cane.  The doctor indicated that Plaintiff was capable of the following activities:  fine manipulation on a frequent basis; climbing, balancing, and operating motor vehicles on an occasional basis; using arm and leg controls, reaching, and working with or around hazardous machinery only rarely; and never bending and or stooping.

At the evidentiary hearing, Davis testified that he walked with a cane, prescribed by Dr. Harrison, and that he had used it for longer than a year (Tr. 64).  Plaintiff testified that he

---

[10]The form was submitted on January 13, 2011 (Tr. 340).

cannot read at all and that, although he signed the forms submitted to the Social Security Administration, he did not complete any of them as he cannot write (Tr. 66-68; *see generally* Tr. 62-88). Davis testified that he had worked as a personal caregiver and had done so until he injured his back, lifting heavy patients; he had also worked as a church musician. He had not worked much in his life because of his back condition which interfered with his ability to sit and stand for long periods of time; he also has Diabetes and a heart condition. The back pain starts at his neck, goes all the way down his spine, and radiates into his legs; on a ten-point scale, his average pain is an eight. Plaintiff takes Lortab and Ultram for his pain; these cause him to feel dizzy, faint-headed, and leads him to sleep four-to-five hours, at least, every other day. Davis recently began physical therapy for his back, and though it has helped some overall, the pain is still severe. He stated that he could walk as far as the corner, but that it would take him fifteen-to-twenty minutes. Plaintiff also has a learning disability. Around the house, he will do some dishwashing, cook, and take care of his son, including taking him to school every day; he can and does drive.

A Vocational Expert (hereinafter *VE*) testified about the work Davis had performed in the past (Tr. 90-95). Following a question posed by the ALJ concerning a hypothetical individual

with Plaintiff's abilities, the VE stated that the individual
would not be able to do any of the jobs formerly performed by
Davis.  He went on to testify about specific light jobs that the
hypothetical individual could perform.

The ALJ issued her determination, finding that Davis had
failed to bring forth any evidence of impairment before his
disability insurance benefits expired on December 31, 2002 and
that, accordingly, he was not entitled to those benefits (Tr.
29-30).[11]  As far as Plaintiff's claim for SSI, the ALJ went on
to find that Plaintiff could not perform any of his past
relevant work, but that there were specific light work jobs that
he could perform (Tr. 26-38).  In reaching this decision, the
ALJ found that Davis's testimony concerning his pain and
limitations was not credible to the extent alleged; she also
discredited the conclusions of Dr. Harrison as unsupported by
the record evidence.

On July 6, 2011, after the ALJ had rendered her decision,
Dr. Harrison wrote a "To Whom it May Concern" letter which
stated as follows:  "I am the primary care physician for Mr.
Davis.  He has chronic low back pain that interferes with his
activities of daily living.  He has been unable to work because
of the pain.  His concentration is affected by the medications

---

[11]The Court notes that this claim has gone unchallenged by
Plaintiff.

he takes to control his pain" (Tr. 342).  This concludes the
evidence of record.

In bringing this action, Davis first claims that he meets
the requirements of Listing 12.05C.  The introductory notes to
Section 12.05 state that "[m]ental retardation refers to a
significantly subaverage general intellectual functioning with
deficits in adaptive behavior initially manifested during the
development period; *i.e.*, the evidence demonstrates or supports
onset of the impairment before age 22."  20 C.F.R. Part 404,
Subpart P, Appendix 1, Listing 12.05 (2013).  Subsection C
requires "[a] valid verbal, performance, or full scale IQ of 60
through 70 and a physical or other mental impairment imposing an
additional and significant work-related limitation of function."
20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C
(2013).

Neurologist Chalhub, on May 22, 2009, administered the
WAIS-III to Davis who received a Verbal IQ score of 68, a
Performance IQ score of 67, and a Full Scale score of 65 (Tr.
231-37).  This would seem to satisfy the IQ requirement part of
the Listing.

The Court further notes that although the regulations
require that Plaintiff demonstrate he suffered "deficits in
adaptive behavior" before he turned twenty-two, 20 C.F.R. Part
404, Subpart P, Appendix 1, Listing 12.05 (2013), the Eleventh

12

Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265,
1266 (11th Cir. 2001), has held "that there is a presumption that
mental retardation is a condition that remains constant
throughout life."  The *Hodges* Court further held "that a
claimant need not present evidence that she manifested deficits
in adaptive functioning prior to the age of twenty-two, when she
presented evidence of low IQ test results after the age of
twenty-two."  *Hodges*, 276 F.3d at 1266.

        In her decision, the ALJ found that "there [was] no
evidence of significantly subaverage intellectual function prior
to age 22, or even thereafter" (Tr. 32).  The ALJ acknowledged
the IQ test scores (Tr. 31), but noted that school records "show
that the claimant made average or better grades in grade school,
with his grades dropping in later years" (Tr. 29; *cf.* 176-77).
The ALJ then found that "[t]here is, however, no evidence of
significantly subaverage general intellectual functioning with
deficits in adaptive functioning that became manifest during the
period prior to the claimant's attainment of age 22 suggested in
the record" (Tr. 29).  The ALJ went on to note that Plaintiff
had engaged in several different jobs requiring "significant
skills" and that he did that work well, as evidenced by
questionnaires completed by the employers (Tr. 29; *cf.* Tr. 180-
86).  Finally, the ALJ noted that Psychologist Bennett concluded
that Davis's "activities were only slightly constricted, his

ability to relate to others was slightly below average but not impaired, and his ability to understand and carryout instructions was slightly below average" (Tr. 32; *cf.* Tr. 266). For these reasons, the ALJ rejected Chalhub's conclusion that Plaintiff was mentally retarded and went on to find that he did not satisfy the requirements of Listing 12.05C.

The Court finds substantial evidence to support the ALJ's conclusion. In spite of the IQ test scores, there is nothing else in the record that supports a finding of mental retardation. Though *Hodges* suggested a presumption that Davis's "mental retardation" had existed all of his life, the Court finds that the ALJ has rebutted that presumption by pointing to other evidence that demonstrates otherwise. The Court finds that Plaintiff's claim that the ALJ improperly found that he did not meet the requirements of Listing 12.05C to be without merit.

Davis next claim that the ALJ failed to properly examine his complaints of pain. The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v.*

14

*Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).  Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

The ALJ, in her determination, reported Davis's testimony about his pain and the limitations that it caused him (Tr. 34-

35).  In discounting that testimony, the ALJ noted that although
an x-ray supported a finding of degenerative disc disease, no
further medical records had been generated to show,
conclusively, that this diagnosis was correct and that it,
objectively, was the basis for the pain Davis claimed (Tr. 35).
In regard to some of the things that Plaintiff asserted, the ALJ
made the following specific findings:  Davis "[did] not confirm
his allegations of ongoing neck pain or pain into his legs;"
"[t]he record does not document that the claimant reported any
allegations of adverse medication effects to treating sources at
any time;" and "[t]he claimant stated that he had to sleep
several hours a day because of pain, but that allegation is not
substantiated in the medical records" (Tr. 34).  The ALJ also
noted that Plaintiff had claimed pain levels of ten at times
during which his prescribed medication did not support such
complaints (Tr. 34).  The ALJ also pointed out that Dr. Sherman
had found Davis's answers evasive in trying to gather a social
and medical history from him and that Dr. Bennett had
specifically noted that he could probably make significant
improvements in virtually every area with appropriate motivation
(Tr. 35; *cf.* 256, 258, 266).  Finally, the ALJ rejected the
conclusions of debilitating pain made by Dr. Harrison (Tr. 36);
Davis has not challenged this finding (see Doc. 17).[12]  For these

---

[12]The Court also notes that although Plaintiff submitted a letter

reasons, the ALJ found Plaintiff's claims of pain and limitation were not credible to the extent alleged.

The Court finds substantial evidence to support the ALJ's conclusions.  While Davis has a condition that could produce pain and some restriction of activities, the objective medical evidence does not support the extreme pain and limitations asserted by Plaintiff.  Davis's physician, Dr. Harrison, was the only doctor who concluded that Plaintiff was disabled; however, his opinion has been rejected.  Davis's claim is without merit.

Plaintiff's final claim is that the ALJ improperly concluded that he was capable of working.  More specifically, Davis has questioned the specific jobs that the ALJ found that he could do, asserting that he does not have the reading, writing, math, and reasoning skills to perform them (Doc. 17, pp. 12-14).

The Court notes that Plaintiff has the burden of proving that he cannot do his past relevant work.  *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (*citing Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).  If that requirement is met, "the burden shifts to the Secretary to establish that the claimant is able to perform other work."  *Chester v. Bowen*, 792

---

from Dr. Harrison after the ALJ's decision further discussing Davis's pain (Tr. 342), that evidence was rejected by the Appeals Council as providing no basis for changing the ALJ's decision (Tr. 1-2); Davis has not challenged this finding either.

17

F.2d 129, 131 (11th Cir. 1986).  To do this, "[t]he ALJ must
articulate specific jobs that the claimant is able to perform,
and this finding must be supported by substantial evidence, not
mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d
1291, 1227 (11th Cir. 2002).  "Finally, the burden shifts back to
the claimant to prove she is unable to perform the jobs
suggested by the Secretary." *Hale v. Bowen*, 831 F.2d 1007, 1011
(11th Cir. 1987) (*citing Francis v. Heckler*, 749 F.2d 1562, 1564
(11th Cir. 1985)).

The ALJ, in her decision, found that Davis had a residual
functional capacity (hereinafter *RFC*) "to perform light work[13] .
. . except he must have a sit/stand option, and he cannot climb
ladders, scaffolds or ropes.  Further, he cannot work at
unprotected heights or around dangerous equipment, and he cannot
follow complex or detailed job instructions" (Tr. 34).  In
reaching this decision, the ALJ specifically found that
Plaintiff did not meet the requirements of Listing 12.05C or any
other mental Listing.  At the evidentiary hearing, the ALJ posed

_____

[13]"Light work involves lifting no more than 20 pounds at a time
with frequent lifting or carrying of objects weighing up to 10 pounds.
Even though the weight lifted may be very little, a job is in this
category when it requires a good deal of walking or standing, or when
it involves sitting most of the time with some pushing and pulling of
arm or leg controls.  To be considered capable of performing a full or
wide range of light work, you must have the ability to do
substantially all of these activities.  If someone can do light work,
we determine that he or she can also do sedentary work, unless there
are additional limiting factors such as loss of fine dexterity or
inability to sit for long periods of time." 20 C.F.R. § 404.1567(b)
(2013).

a hypothetical question consistent with Davis's RFC; the VE responded that Plaintiff could perform the jobs of light bench assembler, a light packer, and office helper (*see* Tr. 91-94). The ALJ adopted those findings as his own (Tr. 37).

The Court notes that in her questioning of the VE, the ALJ had asked about Plaintiff's past work.  The VE responded that his work as a musician required "high school level math[,] reasoning, [and] language skills" (Tr. 90).  This past work easily exceeds the skill requirements necessary to complete the jobs that both the VE and ALJ found that Davis can perform.  The Court finds that Plaintiff has not met his burden of proving that he cannot perform the jobs the ALJ concluded he could do.

Davis has raised three different claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 17th day of June, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE